IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DANIEL WOODYARD,

Plaintiff,

v.

CIMAREX ENERGY CO., THOMAS E.
JORDEN, PAUL N. ECKLEY, HANS
HELMERICH, KATHLEEN A. HOGENSON,
HAROLD R. LOGAN, JR., FLOYD R. PRICE,
MONROE W. ROBERTSON, LISA A. STEWART,
and FRANCES M. VALLEJO,

    Defendants.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

Plaintiff Daniel Woodyard ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Cimarex Energy Co. ("Cimarex" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Cimarex by Cabot Oil & Gas Corporation ("Cabot").

1

**JURISDICTION AND VENUE**

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff is, and has been at all relevant times hereto, an owner of Cimarex common stock.

7. Defendant Cimarex operates as an independent oil and gas exploration and production company primarily in Texas, Oklahoma, and New Mexico. The Company is incorporated in Delaware and its principal executive offices are located in Denver, Colorado. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "XEC."

8. Defendant Thomas E. Jorden ("Jorden") is President, Chief Executive Officer, and Chairman of the Board of the Company.

9. Defendant Paul N. Eckley ("Eckley") is a director of the Company.

10. Defendant Hans Helmerich ("Helmerich") is a director of the Company.

11. Defendant Kathleen A. Hogenson ("Hogenson") is a director of the Company.

12. Defendant Harold R. Logan, Jr. ("Logan") is a director of the Company.

13. Defendant Floyd R. Price ("Price") is a director of the Company.

14. Defendant Monroe W. Robertson ("Robertson") is a director of the Company.

15. Defendant Lisa A. Stewart ("Stewart") is a director of the Company.

16. Defendant Frances M. Vallejo ("Vallejo") is a director of the Company.

17. Defendants Jorden, Eckley, Helmerich, Hogenson, Logan, Price, Robertson, Stewart, and Vallejo are collectively referred to herein as the "Individual Defendants."

18. Defendants Cimarex and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On May 24, 2021, Cimarex and Cabot announced that they had entered into a definitive agreement whereby the companies would combine in an all-stock merger. Under the terms of the agreement, Cimarex shareholders will receive 4.0146 shares of Cabot common stock for each share of Cimarex common stock owned. Upon completion of the Proposed Transaction, Cabot shareholders will own approximately 49.5% and Cimarex shareholders will own approximately 50.5% of the combined company, respectively, on a fully diluted basis. The press release announcing the Proposed Transaction states, in pertinent part:

> **Cabot Oil & Gas and Cimarex Energy to Combine in All-Stock Merger of Equals**
>
> Creating a Premier, Diversified Energy Company with a Strong Free Cash Flow Profile; Positioned to Deliver Superior and Sustainable Returns

NEWS PROVIDED BY
**Cabot Oil & Gas Corporation; Cimarex Energy Co.**
May 24, 2021, 06:30 ET

HOUSTON and DENVER, May 24, 2021 /PRNewswire/ -- **Cabot Oil & Gas Corporation ("Cabot") (NYSE: COG) and Cimarex Energy Co. ("Cimarex") (NYSE: XEC)** today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger of equals. The combination will bring together two industry-leading operators with top-tier oil and natural gas assets to create a diversified energy leader that is positioned to drive enhanced free cash flow generation and returns for investors through market cycles.

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Cimarex shareholders will receive 4.0146 shares of Cabot common stock for each share of Cimarex common stock owned. The exchange ratio, together with closing prices for Cabot and Cimarex on May 21, 2021, reflects an enterprise value for the combined companies of approximately $17 billion. Upon completion of the transaction, Cabot shareholders will own approximately 49.5% and Cimarex shareholders will own approximately 50.5% on a fully diluted basis.

*   *   *

**Headquarters, Leadership and Governance**

The combined business, which will operate under a new name, plans to be headquartered in Houston and maintain its regional offices.

Upon closing, Mr. Dinges will serve as Executive Chair of the Board of Directors of the newly combined business and Mr. Jorden will lead the company as CEO and will serve on the Board of Directors. Scott Schroeder, Cabot's current Chief Financial Officer, will serve as CFO of the combined business. The remainder of the company's leadership team will include executives from both Cabot and Cimarex.

The Board of Directors of the company will be composed of five directors from the current Cabot Board of Directors, including Mr. Dinges, and five directors from the current Cimarex Board of Directors, including Mr. Jorden.

**Timing and Approvals**

The transaction is expected to close in the fourth quarter of 2021, subject to regulatory clearance, the approval of Cabot and Cimarex common shareholders and the satisfaction of other customary closing conditions.

Both Cabot and Cimarex intend to continue paying base quarterly cash dividends through closing.

\*   \*   \*

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Cabot and Baker Botts L.L.P. is serving as its legal counsel. Tudor, Pickering, Holt & Co. is serving as financial advisor to Cimarex and Wachtell, Lipton, Rosen & Katz is serving as its legal counsel.

**About Cabot Oil & Gas**

Cabot Oil & Gas Corporation, headquartered in Houston, Texas is a leading independent natural gas producer, with its entire resource base located in the continental United States. For additional information, visit the Company's homepage at www.cabotog.com.

**About Cimarex Energy**

Cimarex Energy Co. is an independent oil and gas exploration and production company with principal operations in the Permian Basin and Mid-Continent areas of the U.S.

20. On June 30, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

21. The Registration Statement, which recommends that Cimarex shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Cimarex's and Cabot's financial projections; (ii) the financial analyses performed by Cimarex's financial advisor, Tudor, Pickering, Holt & Co. ("TPH"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving TPH.

22. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation

of the Cimarex Board of Directors and Reasons for the Merger; (ii) Opinion of Tudor, Pickering, Holt & Co., Cimarex's Financial Advisor; (iii) Cabot Unaudited Forecasted Financial Information; and (iv) Cimarex Unaudited Forecasted Financial Information.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Cimarex shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Cimarex's and Cabot's Financial Projections

24. The Registration Statement omits material information concerning Cimarex's and Cabot's financial projections.

25. With respect to the "*Summary of Cimarex Forecasted Financial Information*," "*Summary of Cabot Forecasted Financial Information*," "*Summary of Cabot Unaudited Prospective Financial and Operating Information*," and "*Summary of Cimarex Corporate Forecast Adjusted by* Cabot," the Registration Statement fails to disclose: (1) all line items underlying (i) EBITDAX, (ii) Free Cash Flow (Pre-Dividend), and (iii) Unlevered Free Cash Flow; (2) Cimarex's and Cabot's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company.

Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

27. When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning TPH's Analyses**

29. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by TPH.

30. The Registration Statement fails to disclose the following concerning TPH's "*Net*

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 7, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

*Asset Value Analysis*": (1) all line items underlying the future cash flows expected to be generated by each of Cimarex's and Cabot's assets through the end of their economic lives; (2) the individual inputs and assumptions underlying the discount rates ranging from, in the case of Cimarex, 8.00% to 9.75% and, in the case of Cabot, 6.50% to 8.00%; (3) the value of the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbon resources; (4) the value of future estimated effects of hedging; (5) the value of future estimated effects of general and administrative expenses, taxes and non-drilling and completion capital expenditures; and (6) net debt and, in the case of Cimarex, preferred equity.

31.     The Registration Statement fails to disclose the following concerning TPH's "*Discounted Cash Flow Analyses*": (1) all line items underlying the standalone unlevered free cash flows expected to be generated by each of Cimarex and Cabot; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from, in the case of Cimarex, 8.00% to 9.75% and, in the case of Cabot, 6.50% to 8.00%, and (ii) EV/EBITDAX multiples ranging from, in the case of Cimarex, 4.50x to 5.50x, and in the case of Cabot, 6.00x to 7.50x; (3) Cimarex's and Cabot's terminal values; (4) Cimarex's and Cabot's respective net debt and, in the case of Cimarex, preferred equity; and (5) the number of fully diluted shares outstanding for each of Cimarex and Cabot.

32.     The Registration Statement fails to disclose the following concerning TPH's "*Has/Gets Analysis — NAV Accretion*": (1) the net asset values of Cimarex and Cabot on a standalone basis; (2) the Synergies; (3) the estimated fees and expenses relating to the merger; (4) the individual inputs and assumptions underlying the discount ranges of 7.3% to 8.9% and 6.5% to 8.0%; and (5) the pro forma share count.

33.     The Registration Statement fails to disclose the following concerning TPH's

"*Equity Research Analysts' Price Targets*" analysis: (1) the individual price targets observed by TPH in its analysis; and (2) the sources thereof.

34. The valuation methods, underlying assumptions, and key inputs used by TPH in rendering its purported fairness opinion must be fairly disclosed to Cimarex shareholders. The description of TPH's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Cimarex shareholders are unable to fully understand TPH's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Potential Conflicts of Interest Involving TPH**

35. The Registration Statement omits material information concerning potential conflicts of interest involving TPH.

36. The Registration Statement fails to disclose the timing and nature of the past services TPH and/or its affiliates provided Cimarex, Cabot, and/or their affiliates, including the amount of compensation TPH received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

37. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight

to place on that analysis.

38.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

41.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

42.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

43.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

11

herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

49. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

   B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

   C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

   D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

   E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 7, 2021         Respectfully submitted,

               **HALPER SADEH LLP**

               /s/ Daniel Sadeh
               Daniel Sadeh, Esq.
               Zachary Halper, Esq. (to be admitted *pro hac vice*)
               667 Madison Avenue, 5th Floor
               New York, NY 10065
               Telephone: (212) 763-0060
               Facsimile: (646) 776-2600
               Email: sadeh@halpersadeh.com
                  zhalper@halpersadeh.com

               *Counsel for Plaintiff*